**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 2011-60 (WOB-JGW)**

**WESLEY BROWN**                                                                     **PLAINTIFF**

**VS.**                   **MEMORANDUM OPINION AND ORDER**

**CAMPBELL COUNTY,
KENTUCKY, ET AL.**                                               **DEFENDANT**

Plaintiff Wesley Brown, a former detainee at the Campbell County Detention Center (CCDC), filed the instant action against Defendants Campbell County, Kentucky; Campbell County Jailer Greg Buckler, both in his official and individual capacities; Southern Health Partners, Inc. (SHP); and a number of SHP employees in their official and individual capacities, alleging cruel and unusual punishment in violation of the 8th and 14th Amendments and Brown's civil rights under 42 U.S.C. § 1983. Brown also alleges various state law claims.[1]

Brown has entered into an agreed dismissal with SHP and the SHP employees. *See* Doc. 74. Thus, Brown's remaining claims are only against Campbell County, Kentucky

---
[1] Brown also asserts claims against "Deputy Music" in his individual capacity. *See* Doc. 1. However, the docket does not reflect any proof of service on "Deputy Music." Additionally, there is no mention of "Deputy Music" in Brown's entire deposition. *See* Deposition of Wesley Brown, Volumes 1 and 2. Moreover, Brown's responsive memorandum makes no allegation of any action or inaction by "Deputy Music." Accordingly, this Court finds any claims against "Deputy Music" to be abandoned.

and Campbell County Jailer Greg Buckler in his official and individual capacities (collectively "Campbell County Defendants").

This matter is currently before the Court on the Campbell County Defendants' motion for summary judgment (Doc. 46).

Having reviewed this matter, the Court concludes that oral argument is unnecessary to the resolution of this motion. The Court therefore issues the following Memorandum Opinion and Order.

### *Factual and Procedural Background*

#### A. General Background

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Doc. 46-1). SHP, in turn, contracts with a physician and employs nurses to staff the CCDC. These arrangements were in place at all times relevant to this action.

#### B. Brown's Incarceration

Brown was incarcerated at the CCDC from July 26, 2010 until January 7, 2011. *See* Brown Depo. – Vol. 1 at 113-14. Upon admission to the facility, Brown advised the booking

deputy that he had high blood pressure, heart problems, and that he was required to take various medications. *Id*. at 114-15; *see also* Doc. 46-3.

Brown also asserts that Defendant Buckler was present during that exchange, and Defendant Buckler inquired about Brown's medical issues. *Id*. at 69-70. Brown testified that, in response, Defendant Buckler "called medical to come up there and look at" him. *Id*. at 70. Brown admits that this was the only interaction he had with Defendant Buckler during this period of incarceration. *Id*. at 70-71. Brown also admits that he was seen by the medical staff shortly after his admission to the CCDC. *Id*. at 124-27.

While Brown admits that he received adequate medical care for the majority of his stint at the CCDC, he asserts that the Defendants failed to provide adequate medical care from a period beginning in late November until mid-December 2010. *Id*. at 131-32.

In late November, Brown began experiencing severe pain and swelling in his right arm. *Id*. at 136-37. Brown does not recall the exact date that the pain began, but he submitted a "sick call slip – medical request" on December 1, 2010 which indicated that the pain began three (3) days

earlier.[2]  *See* Doc. 46-9.

On December 3, 2010, Brown was seen by Nurse Brummett, a staff nurse with SHP.  *Id*.  She noted that Brown had a yellow bruise on his right arm and he rated the pain he was experiencing at a nine (9) out of ten (10).  *Id*.  Over the next two weeks, the pain and swelling continued to increase, resulting in bruising down Brown's right arm and chest.  *See* Brown Depo. – Vol. 2 at 44-58.  Additionally, Brown intermittently lost feeling in his right arm and, eventually, lost the ability to move his right arm completely.[3]  *Id*. at 57-58.

Over that two-week period, CCDC records indicate that Brown was seen numerous times by the nursing staff.  *See* Doc 46-7.  In addition to visits with the nursing staff, multiple tests and x-rays were conducted on Brown's arm and chest and Brown was examined by Dr. Mark Schroer on December 8, 2010 and Dr. Bichelmeier on December 16, 2010.  *Id*.  After examination by Dr. Bichelmeier, Brown was transported to St. Elizabeth Hospital.  *Id*.

At St. Elizabeth Hospital, doctors determined that Brown had a blood clot in his right arm and proceeded with surgery to remove the blood clot.  *See* Doc. 46-12.  After

---

[2] Brown admits that this was the only "sick call slip – medical request" that he sent during this period.  *See* Brown Depo. – Vol. 2 at 88.
[3] Brown eventually regained the use of his right arm, but he is still unable to use his right hand.  *See* Brown Depo. – Vol. 2 at 59.

4

surgery, Brown returned to the CCDC on December 24, 2010. *See* Doc. 46-7. Ultimately, Brown was released on parole on January 7, 2011. *See* Doc. 46-13; 46-14. Brown does not allege any additional problems with medical care during that time period. *See* Brown Depo. – Vol. 2 at 117-18.

Brown's entire complaint revolves around his contention that despite his continuous complaints to nursing staff and deputies and an obvious increase in the bruising and swelling in his right arm, he was not sent to the hospital until December 16, 2010.[4] *Id*. at 108-10. In fact, Brown testified that Kim Holtz, a Medical Team Administrator for SHP, refused to send Brown to the hospital despite a request to do so from another SHP employee. *Id*. at 40.

Brown's expert, Dr. Joseph Paris, also opined that the medical staff's failure to properly diagnose and treat Brown's condition, in light of Brown's medical history and his symptoms, constituted deliberate indifference to Brown's serious medical needs. *See* Doc. 59-3.

---

[4] While Brown asserts that complained to various deputies as they walked by his cell, he admits that no deputy prevented him from seeing the medical department. *See* Brown Depo. – Vol. 2 at 96-97. In fact, Brown testified that, "The officers, you know, they helped me more than the medical staff did." *Id*. at 97. Additionally, Brown confirmed that his complaint is not about a lack of access to medical treatment; his complaint is about the medical staff's failure to properly treat his medical needs. *Id*. at 96. Brown testified, "You know, I mean I was seeing – was seeing medical every day. You know, they were looking at it. They just wasn't doing nothing about it." *Id*.

*Analysis*

**A.    Legal Standards**

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." Plaintiff argues that his Eighth Amendment rights to be free from cruel and unusual punishment were violated.

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at 105-06).

"Deliberate indifference" has both an objective and a

6

subjective component. *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). With respect to medical needs, the need "must be objectively, 'sufficiently serious.'" *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 424 (internal quotations and citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). *See also id.* at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

### B. <u>Qualified Immunity</u>

Assuming a plaintiff raises a triable issue as to

7

whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity. Defendant Greg Buckler asserts this defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

### C. Application to Brown's Claims

The Campbell County Defendants concede, for purposes of their motion, that Brown's medical needs were objectively serious. *See* Doc. 46 at pp. 6-7. Thus, this Court's focus will be on whether the Campbell County Defendants were deliberately indifferent to Brown's medical needs.

Brown asserts that Defendant Buckler was aware of

facts from which he could, and did, draw an inference that a substantial risk of serious harm existed as to Brown's health. However, no such evidence exists in the record.

In fact, Brown's responsive memorandum states that, "Defendant Buckler had almost no contact with the general population, much less with Mr. Brown specifically." *See* Doc. 59 at p. 9. Despite offering no evidence that Defendant Buckler had knowledge of Brown's medical needs pertaining to Brown's blood clot, Brown asserts that deliberate indifference can be seen through Defendant Buckler's "knowledge of potential and specific problems in the medical care of all inmates" and his failure to do anything "to ensure that the inmates were receiving any kind of care." *Id*. at pp. 9-10.

However, even if Brown could establish Defendant Buckler's general awareness of "potential and specific problems in the medical care of all inmates," this provides no basis for a claim against Defendant Buckler in his individual capacity where it is undisputed that Defendant Buckler played no role in Brown's medical care. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005) ("Because § 1983 liability cannot be imposed under a theory of *respondeat superior,* proof of personal involvement is required for a supervisor to incur personal liability.")

9

Thus, finding no basis upon which a reasonable jury could find a constitutional violation, Defendant Buckler is entitled to summary judgment.[5]

Additionally, Brown cannot establish a claim under § 1983 against Campbell County. "A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)). Additionally, "[a] municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom." *Id*. (citing *Monell v. Dept. of Soc. Servs. City of New York,* 436 U.S. 658, 694 (1978)).

Brown's failure to establish any underlying constitutional violation by a Campbell County officer is fatal to his claim against Campbell County. *See Heller*, 475 U.S. at 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive

---

[5] The Court thus need not reach the issue of qualified immunity, although Defendant Buckler would obviously be entitled to that defense given the absence of any constitutional violation.

force is quite beside the point."); *Bowman v. Corr. Corp. of America,* 350 F.3d 537, 545 (6th Cir. 2003) ("[W]ithout a constitutional violation of Anthony's Eighth Amendment right by Dr. Coble or Warden Meyers, CCA cannot be held liable for its policy, even if it were to encourage deliberate indifference."); *Bukowski v. City of Toledo,* 326 F.3d 702, 712-713 (6th Cir.2003) ("Because [the City] can only be held liable if there is a showing of liability on the part of its officials, the determination that the City's officials did not violate the plaintiffs' constitutional rights resolves the claim against the City as well.").

Moreover, Brown also has adduced no admissible evidence that Campbell County employed a policy or custom of deliberate indifference to inmate medical needs. This Court has already held in another case that the same affidavits submitted by Brown here regarding allegedly poor care at the CCDC are: (1) inadmissible for a variety of reasons, and (2) even if admissible, inadequate as a matter of law to support a municipal liability claim against Campbell County. *Fryman v. Campbell County*, Covington Civil Action No. 09-114-WOB-JGW, Docs. 25, 30.

Additionally, the only actions Brown complains of are those taken by the medical staff at the CCDC. However,

11

where Brown's allegations concern the course of action taken by the medical staff rather than access to the medical staff, he cannot establish deliberate indifference. *See White v. Corr. Med. Serv., Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("Although White did not receive the care he wanted, the conduct he alleged did not constitute a deliberate indifference to his medical needs."); *Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (noting that where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.") (citation omitted).

Thus, finding no constitutional violation nor any policy or custom which directly violated Brown's constitutional rights, Campbell County is also entitled to summary judgment.

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED THAT:**

1. The Campbell County Defendants' motion for summary judgment (Doc. 46) be, and is hereby, **GRANTED,** as to counts I and II of Plaintiff's Complaint**;**

2. Pursuant to footnote 1, Counts I and II of Plaintiff Wesley Brown's Complaint against Deputy Music be, and are hereby, **DISMISSED WITH PREJUDICE**, for failure to prosecute;

3. Plaintiff Wesley Brown's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE**; and

4. A separate judgment will enter concurrently herewith.

This 26th day of August, 2013.



Signed By:
*William O. Bertelsman* WOB
United States District Judge